I'll wait for everybody to get settled. Okay, Mr. Rodriguez. May it please the court, good morning. Juan Rodriguez for the appellant's Terra Towers. Terra raises two issues on appeal that merit vacature of the underlying award and reversal. The first one is the fundamentally unfair process that the panel engaged in, which denied Terra an opportunity to be heard. And the second is the November 12th order, which is a separate judicial order that would have been entitled to judicial review. On the issue of the unfair process, the panel, as you know, entered a procedural order number three and decided it was going to phase the case, but it would consider the issue of specific performance. And Terra sought discovery. The panel decided to deny any discovery at all and entered another order explaining, and I'm going to read, and I'm reading from the appendix 1014. The panel said phase one as now constituted under procedural order number three, the tribunal intends only to make a determination of the legal sufficiency of pleaded affirmative defenses to the requested specific performance. And as to those affirmative defenses found to be legally sufficient, we will turn to decide what evidence gathering and hearing process is suitable. That never happened. Well, because didn't the arbitration panel determine that your affirmative defenses to specific performance, waiver, unclean hands, in fact, would not be legally sufficient because the agreement would still allow specific performance even if there had been some misconduct before or unclean hands and so on. That's what the arbitration panel said, right? Your Honor. So, like, it actually was complied with it. It just determined there weren't any affirmative defenses that were legally sufficient. Your Honor, well, no. I disagree. And the reason I disagree is because, first of all, the panel said that it intended only to determine the legal sufficiency of the affirmative defenses and then decide what evidence gathering and hearing process would be suitable. That's what the panel said to the parties. It didn't do that, number one. Number two, on what basis did it find that the affirmative defenses were not legally sufficient? Well, it ignored New York law. Even though it had asked the parties to brief New York law and New York law was the controlling substantive law of the contract, it went ahead and ignored it and said, we don't need to follow New York law. Why didn't you just go ahead and ignore it, right? With two things, I suppose. It said, we think the arbitration rules apply. And didn't Tara respond to that by saying, well, no, you shouldn't follow the arbitration rules. You should follow New York law. But then even so, we think that both of them would lead to the same result. Wasn't that Tara's position of the arbitration? No, Tara's position was that rule 47 is a procedural rule. And in fact, what Tara argued is that even rule 47 of the commercial rules that say that empower an arbitral panel to grant equitable relief, the contours of how that equitable relief is granted is governed by New York substantive law, which was controlling. And the parties and the tribunal didn't have the... Well, this is a question of contract interpretation, right? So the agreement invokes the arbitration rules. It specifically said that it's going to be governed by the arbitration rules, right? And so the question is, does that allow you to invoke, what is it, rule 47A, instead of whatever the default rule of New York law is? And the arbitration panel said that it did. I mean, isn't that a matter of Your Honor, no, because the way you read both provisions is that New York substantive law applies, but the commercial rules is a procedural rule. The commercial rules simply say that the panel can grant equitable relief it deems appropriate. But on what basis? I mean, the parties to a contract can contract out of whatever default rules the state provides, right? So if it's in the contract, you don't apply the state substantive law. You apply the requirements of the contract. Your Honor, I agree. But what happened here is that the panel... So if, in fact, the contract said something like the arbitration panel shall be authorized to grant relief in accordance with rule 47A, you wouldn't have this argument? Because they're allowed to do that, right? Yes, except that... Okay, so didn't the arbitration panel essentially say that's what the contract said? No, because what the panel did was ignore the fact that the contract here said that the law, the substantive law of New York would apply. And the panel was not free to ignore that and say, no, we're not constrained by that. But a provision that says the law of New York applies doesn't override every provision of the contract as if you don't have a contract, right? Just if disputes arise under the contract, you apply New York law to resolve it. Correct. And what happened here, Your Honor, is that they were not number one. They said, remember, they said they would have evidence gathering and hearing process. They never did that. They went ahead and disposed of an affirmative defense that entered an award without any evidence whatsoever. And with respect to Your Honor's comment that it found that the affirmative defenses were not legally sufficient, it found that waiver was legally sufficient because it went ahead and on its own found that waiver had not been shown, made factual findings with respect to waiver without any evidence and without allowing Tara an opportunity to even be heard on that issue. So, you know, if the issue was just the legal sufficiency of an affirmative defense, it would not have made factual findings on waiver. And it did. The waiver argument is that they didn't request a proposed sale notice from the board. Is that the argument for waiver? The waiver argument, Your Honor, goes to the fact that under the contract, once they invoked the notice of sale, they had 30 days to have a board meeting to appoint an investment bank. Right, and they didn't. And your position is that means it just expired, right? Your position is because they didn't take any action to make that happen. You said that that's a waiver, right? More than that, Your Honor, because what they did was not only did they not do that, but then they filed a demand for arbitration prior to the expiration of the 30 days. My question is this. Didn't the arbitration panel say that actually the shareholder agreement didn't clearly require Peppertree or any of the minority shareholders to request the board act after going through the initial process and triggering the process? And the panel says this alone negates intentional relinquishment and defeats terrorist contention of waiver, right? No, Your Honor. So you say under the agreement, even if what you say is true, it wouldn't be a waiver. No, what the panel did was found as a matter of fact that it was, I think the way they put it was the ball was in terrorist court to call a board meeting. So what it found as a matter of fact was that it was our obligation to call a board meeting and therefore... Because the agreement just says if you have the report from the bank and so on, you proceed to the next step and it just happens automatically. You have to then arrange for an approved sale, right? What the agreement says is that the company must perform, must appoint an investment bank and the company can act without a board meeting. The problem here, which was a dispute, is the fact that the panel, I mean the board, is deadlocked. There are four board members. And so I see I only have a minute left. It's all right, you can keep going. The issue then, Your Honor, with respect to the second issue is the November 12th order. The November 12th order... Oh wait, I wanted to hear your answer to that. The board was deadlocked and so therefore what? The board was deadlocked. So what the panel decided to do was to ignore that provision of the agreement that requires the company to apport the investment bank and it found as a matter of fact that it was not their obligation to call a board meeting. It was our obligation. That's November found in the agreement. And that is a factual matter. It's not found, it doesn't say the opposite in the agreement either, right? So they were interpreting the contract, right? Well, they made up their own provision that it was Tara's obligation and then they ignored the fact that the demand for arbitration was filed before the 30 day expiration. And again, Your Honor, they did that and ordered specific performance, which is an injunction, without any evidence whatsoever. And again, I go back to this is a fundamentally unfair process. Sounds like you have buyer's remorse. Huh? Sounds like you have buyer's remorse about entering into this arbitration. Well, I wouldn't say that, but I go back to the Iran aircraft case. Don't you have to show manifest disregard at all in order to overturn the arbitration award? Your Honor, I don't think so. I think under the What are the provisions that you're relying on to overturn the arbitration award? It's not a litigation. This is not a district court proceeding that occurred. It was arbitration, which gets enormous amount of deference and you've got to show fraud at the outset and various other basic things to get it overturned. And under our case law, manifest disregard of the law. And I don't see manifest disregard of the law being shown here. Your Honor, under the Iran aircraft case just like there, the panel had misled the parties to believe that certain evidence was not going to be required and then change the rules of the game. The same thing happened here. This panel said that it was only testing the legal sufficiency of the affirmative defenses and that it would later seek evidence and have a hearing. It did not do that. And that led to fundamentally not allowing That's an error of the district court. It's an error of the district court. It might even be reversible error of the district court. This is not a tradition that you bargain for. I mean, isn't that a simple answer? He's entitled to make mistakes. He may get the law wrong. The law may say X and he looks at it and then decides not X. But he regarded the law. He engaged with the law. It wasn't manifestly disregarding it. He just gave a different outcome and gave reasons for that and whatever and gave a different outcome. You can't act that this way. I disagree and I'll tell you why. Because panels are creatures of contract. And if the contract requires New York law, they cannot substitute New York law for their own brand of justice. Your Honor, they did. But what happened was that they disallowed any equitable defenses, which is contrary to New York law. And the way they got back to the argument about whether they actually decided those wouldn't be legally sufficient or not. Correct. Okay. I think we have that argument. Have you reserved time for rebuttal or not? No, we have not. Okay. Well, thank you very much. Thank you very much, Mr Rodriguez. We'll turn to the first appellee, Mr Unger. Thank you very much, Your Honors. Good morning. May it please the court. My name is Mike Unger and I represent the petitioner's appellees, as the courts referred to them as. Peppertree Petitioner Appellee AMLQ is represented by my colleague Greg Wiener. We've agreed to divide the ten minutes allotted to appellees with eight minutes for Peppertree and two minutes for AMLQ. And I'll address the tribunal's decision to order specific performance of the sale of the company. And my colleague will address the interim orders. I want to start right where Judge Walker left off. I believe this is a classic case of buyer's remorse. I agree that enormous deference should be paid to the arbitrators in this case. Respectfully, I believe the standard is higher than that set forth in manifest disregard, which is reserved only for the most extraordinary case, which isn't present here. I think the Second Circuit has made it clear there has to be a near vertical wall here with a barely colorable justification for the decision that was reached. Even a cursory reading of the very robust, well reasoned, and indeed I would respectfully submit scholarly decision by the arbitrators indicate that there is vastly more than barely colorable justification for the decision that was reached here. This case prevents a straightforward question of whether there's a proper legal basis to vacate a unanimous award issued by that tribunal comprised of three distinguished arbitrators. Well, didn't they take arguments on the application of New York law all along and then only at the end of that process say we're going to apply the arbitration rule? What they did, Your Honor, and they went through robust analysis of it right in the opinion. Not the arbitration that Mr. Rodriguez claims to be at was not the arbitration that I was at. There was plenty of discussion. There were pre, I'll get to your question momentarily, there were pre-hearing submissions and testimony was taken. An extensive briefing was submitted. There was plenty of argument during the hearing itself on every issue, including Rule 47, including New York law, including most relevant Section 5.04 of the New York Constitution. The parties, as Your Honor pointed out, were the parties contractually agreed to exactly what would be provided here. And, if I can digress for a second, as well, the parties expressly agreed that the FAA, that the AAA and, the FAA applies, but that the AAA and the ICDR rules would apply and incorporate specifically Rule 47, which in turn specifically allows for the issuance of a specific performance. That is a procedural rule and so you should apply New York Substantive Law and not the procedural rule of the AAA. Sorry, Your Honor. I'm in the camp that it doesn't matter which one you apply. And, again, where I was going, and I want to answer your first question of a moment ago, where I was going with that is the Tribunal went through a very robust analysis of all three. They said it doesn't matter if you look at the specific language of the contract, which, as Your Honor pointed out earlier, sophisticated parties represented by sophisticated counsel entered into this agreement, maybe leading to a buyer's or seller's remorse, but nonetheless agreed to this, these provisions. There are two that are germane. The approved sale, which, again, unlike perhaps the Port Authority bylaws that we were just hearing about, here the language is plain, clear, and declarative. Anybody could follow along what was going to happen in the event that after the lockup period, one party or the other, or any of them, wish to exit this marriage, for lack of a better term. Then it says there shall be specific performance. So the arbitrators went through a rigorous analysis of the mandatory contract language, which, again, is very plain, clear, and declarative on its face, more than barely colorable justification for the determination. Number two, they looked at New York law and found that New York courts routinely enforce specific performance in these types of situations. And again, went through a very thorough and diligent analysis with a whole bunch of what-if reasoning, and it's right in the 44-page ruling that you have in front of you, noting that, wait a minute, forcing business partners, think about it, forcing business partners to remain in business together represents quintessential harm, as does the deprivation of corporate governance rights like these corporate governance rights. Prolonged illiquidity, which is what they're arguing for, deprives Peppertree and AMLQ of their right to deploy their investment capital precisely as they wish to deploy it. And so what we have here are sophisticated parties with sophisticated counsel agreeing to specific performance in a clear and complete document, which is enforceable under New York law. So they looked at New York law. There's no surprise. There was no pivot or any turnabout by the arbitrators at any point in time in the proceedings. We were all on notice. We knew what we had to brief. There were post- hearing briefs as well. Again, very robust with the arbitrators asking each side a number of specific questions geared right to the issues that we're talking about, including but not limited to some of these affirmative defenses. And then last but not least, they looked... Precisely, Your Honor. And even if they were wrong, as Judge Walker points out, and he's absolutely correct, even if they're wrong, they vastly exceed manifest disregard of the law. They're allowed to be wrong on the law. You could look at it, and you could determine that you would have come down differently. And we would still prevail. You don't think that they're wrong? I do not think they're wrong by a long shot, Your Honor. I think they got it spot on right. I think this is very, very easy to follow. And the other thing that I would say is, along the way, again, the language in the... Well, so Archie Rodriguez's manifest disregard argument relied in part on not allowing TERA to raise its affirmative defenses. So if the arbitration panel said you're going to be able to present evidence at a later date, and they didn't get an opportunity to do that, why isn't that manifest disregard? Two problems with that one, Your Honor. First of all, they were allowed to put in anything they wanted with respect to those affirmative defenses during the Phase 1 hearing. Second, there's a Phase 2 hearing. We're right in the middle of it. And if they want to put in additional evidence as we go along on any of those affirmative defenses, it may have an impact on damages, but it has absolutely nothing to do with our right, my client's right, and Mr. Wiener's client's right to have the company sold in a timely basis. We want a business divorce. We negotiated for a business divorce. We said after five years, after a five-year lock-up period, we or they could exit because of, and in our case, we wish to exit the situation because we would like to divorce. Sorry. I can't respond to it directly this way, but I will respond to it this way, Your Honor. It's nonsense. All they're doing by deadlocking, it's there's a better word for it, but it's nonsense. Because the deadlock that he's referring to is caused by them voting no to the sale of the company, which they contractually agreed to vote yes to the sale of the company. It's a complete self-inflicted wound, a self-inflicted situation. It's completely artificial. The thing that the board would be deadlocked from doing is the thing that you're seeking in the arbitration. Precisely, Your Honor. That was the second part of my, I don't even need to answer it now because you got it right. I mean, that's exactly, that is what precipitated the arbitration in the first place was their refusal to vote for the sale, their refusal to move forward, their objection. One could argue that their objection continues to this day through all these proceedings, both at the tribunal level, at the district court level, and now before the U.S. Second Circuit Court of Appeals. They are plainly in the agreement, we agree, no matter what, we agree to vote for the sale. We will be in favor of the sale. For all those reasons, thank you, Your Honor. I yield to Mr. Wiener. Thank you, Your Honor. May it please the Court. I'm just going to briefly address the interim order issue. So the tribunal issued two interim orders. They're interim orders, not final awards subject to appeal. In both cases, the awards, the orders were entered pursuant to AAA Rule R37, which governs, quote, interim measures, close quote, and they were treated as such by this very experienced arbitration panel. The appellants themselves treated the November 12th arbitration and, in fact, asserted that it was not a final award. That's on A1192. And there was a March 15th order that ordered compliance with the November 12th order, right? Yes. And is it accurate that at the time of the appeal, at least, maybe even now, or at the time of going into court at the lawsuit, maybe even now, there were more proceedings about the arbitration? Exactly, Your Honor. So there was the November 12th order, which required certain action in respect of the company management, which had been removed improperly by DT. That was not an existing claim in the arbitration. It came up post-initiation of the arbitration, and our clients and Mr. Unger's clients sought interim relief, which was granted on November 12th. That required further proceedings to show compliance with that. Then in March, we sought we made a motion to compel compliance because they were not complying. The March 15th interim order expressly said that there needed to be a further report on the compliance. And then there were subsequent proceedings on a motion for sanctions for failure to comply. And then in August, the tribunal issued the second partial final award. That's a final award. That award is subject to a pending petition to vacate before Judge Kaplan. That's the proper procedure for challenging these interim awards. So they are, in fact, appealing the substance of the November 12th order. Exactly. They are appealing it, and that's the issue. And the only other thing is just, so these are interim awards. They should not be transformed into final awards. Arbitration does not allow interlocutory review. It would undermine that policy. And lastly, in terms of the November 12th order, they actually waived any ability to challenge that because they did not move to vacate it within the three months mandated under the FAA. And so therefore, they don't even have an ability to challenge that if you have determined it was, if it were a final award. But it's not. Thank you very much. Thank you very much, Mr. Wiener. The case is submitted.